UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

DAVID ALAN HOAG,

        Plaintiff,
vs.

EPSTEIN, WEINBERG & ASSOCIATES LLC,

        Defendant.
_____/

**VERIFIED COMPLAINT**

**COMES NOW**, the Plaintiff, DAVID ALAN HOAG, by and through undersigned counsel, and brings this action against the Defendant, EPSTEIN, WEINBERG & ASSOCIATES LLC ("EPSTEIN"), and as grounds thereof would allege as follows:

**JURISDICTION**

1. This action is brought by a consumer for Defendant's violations of Florida Statutes §§ 559.55-559.785, known more commonly as the "Florida Consumer Collection Practices Act", ("FCCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C §227, et seq. ("TCPA").

2. Plaintiff alleges that Defendant has unlawfully called Plaintiff's cellular telephone in an attempt to collect an alleged debt from Plaintiff in direct contravention the aforesaid statutes. Consequently, Plaintiff seeks injunctive relief as well as damages, fees, and costs in accordance with the FDCPA, FCCPA and the TCPA.

3. The FDCPA and FCCPA prevents debt collectors and persons, respectively, from engaging in abusive, deceptive, and unfair collection practices.

4.      The TCPA prohibits any person "to make any call (other than for emergency purposes or made with the prior consent of the called party) using any automatic telephone dialing system or any artificial or prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. §227(b)(1)(A).

5.      This court has jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227. Federal courts have jurisdiction over private suits arising under the TCPA. <u>Mims v. Arrow Financial Services, LLC</u>, 132 S. Ct. 740 (2012).

6.      Under 28 U.S.C. § 1367(a), this court has supplemental jurisdiction over Plaintiff's state law FCCPA claim in that it is so related to the federal TCPA and FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue in this District is proper because Plaintiff resides here and Defendant does business and places phone calls into this District.

**PARTIES**

8.      At all times material hereto, Defendant, Epstein was and is a foreign Limited Liability Company under the laws of the State of Georgia, with a principal office listed as P.O. Box 491318, College Park, Georgia, 30349.

9.      At all times material hereto, Epstein was and is a "person" as said term is defined under Florida Statute §1.01(3).

FD-2078

10. At all times material hereto, Epstein regularly collects or attempts to collect debts for other parties and is a "debt collector" as said term is defined under 15 U.S.C. §1692a(6) and Florida Statute §559.55(6).

11. At all times material hereto, Epstein regularly uses the mail and telephone in a business for the purpose of collecting consumer debts.

12. At all times material hereto, Epstein, was acting as a debt collector with respect to the collection of Plaintiff's alleged debt

13. Epstein regularly uses the mail and telephone in a business the principal purpose of which is the collection of debts.

14. Upon information and belief, Epstein owns and maintains the domain name http://ewallc.org/1.html.

15. According to its own website, Epstein claims to be "the final step in the collection process".

16. At all times relevant to this complaint, the Epstein has owned, operated, and or controlled "customer premises equipment" as defined by the TCPA that originated, routed, and/or terminated telecommunications. 47 U.S.C. § 153(14).

17. At all times relevant to this complaint, Epstein engages in "telecommunications" as defined by the TCPA. 47 U.S.C. § 153(43).

18. At all times relevant to this complaint, Epstein engages in "interstate communications" as defined by the TCPA. 47 U.S.C. § 153(22).

19. At all times relevant to this complaint, Epstein has used, controlled, and/or operated "wire communications" as defined by the TCPA, that existed as instrumentalities of interstate and intrastate commerce. 47 U.S.C. § 153(52).

20. At all times relevant to this complaint, Epstein has used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA. 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

21. At all times relevant to this complaint, the Plaintiff, was and is a natural person, and is a "consumer" as that term is defined by 15 USC 1692(a)(3) and Florida Statutes § 559.55(2), and/or a person with standing to bring a claim under the FDCPA, FCCPA and the TCPA by virtue of being directly affected by violations of the Acts.

22. At all times relevant to this complaint, the Plaintiff, was and is a natural person "person" as defined by 47 U.S.C. § 153(32).

23. At all times material hereto, the mortgage debt in question was a "debt" as said term is defined under 15 U.S.C. §1692a(5) and Florida Statute §559.55(1).

## BACKGROUND AND GENERAL ALLEGATIONS

24. Defendant sought to collect a debt from Plaintiff arising from an alleged debt incurred by Plaintiff for personal, family, or household purposes.

25. On or about the afternoon of August 10, 2013, Mr. Hoag received a call from an agent and representative of Defendant who identified herself as Mrs. Evans.

26. Mrs. Evans stated during the call that she represents Epstein in attempting to collect a debt that was owed for a "payday loan" allegedly acquired from a company named "Cashnet USA".

27. Mr. Hoag responded in surprise as he had never taken out a loan from CashNet USA, and in fact, had never even heard of them previously.

28.     Mrs. Evans persisted that he owed the money as he had taken out a loan for $500.00 in May of 2009, and now owed around $1,800 including penalties, interests, and legal fees.

29.     Mrs. Evan then began to threaten Mr. Hoag and stated that he would be prosecuted for fraud for not paying and that he would be barred from receiving any more student aid or any other public assistance.

30.     Mr. Hoag was and is studying nuclear medicine at Barry University and receiving student aid to allow him to pay his tuition.

31.     Mr. Hoag depended heavily on student aid to allow him to fulfill his dream of obtaining a degree in nuclear medicine technology and now was faced with the prospect of having to forego his dreams.

32.     The thought of losing his student aid created a tremendous amount of stress for Mr. Hoag and led to loss of sleep, loss of appetite, fear, and considerable apprehension.

33.     Mrs. Evans stated that she would call back later that evening and urged Mr. Hoag to borrow the money from family members due to the urgency of the matter.

34.     Mr. Hoag told Mrs. Evans that he disputed the debt and provided his e-mail address for verification.

35.     Mrs. Evans did call back that evening and left a message for Mr. Hoag.

36.     At no point during the conversation did Mrs. Evans inform Mr. Hoag of his rights at detailed in 15 U.S.C. 1692g.

37.     On or about August 21, 2013 at or about 3:50 p.m., Mr. Hoag received a call on his cellular phone from an agent and representative of Epstein who identified himself as Investigator Jones.

38. Mr. Jones repeated what Mrs. Evans had said and stated that his was the last desk before formal prosecution.

39. Mr. Hoag told Mr. Jones that he disputed the debt and provided his e-mail address for verification.

40. Inspector Jones demanded a 'good-faith' payment of $150.00 and insisted that the payment must be made immediately over the phone, and this would stop any fraud charges from being filed.

41. Inspector Jones then called back that very day three more times at 5:53 p.m., 6:11 p.m., and 7:07 p.m.

42. During each phone call, Inspector Jones stated that he could only hold off the fraud charges for so long and that Mr. Hoag needed to make a payment immediately.

43. On or about August 26, 2013 at 3:10 p.m. and 3:15 p.m., Mr. Hoag received two phone calls on his cellular telephone from Epstein from phone number 800-333-7368 and 678-666-5759, respectively. When Mr. Hoag answered the phone, he was greeted with a pre-recorded message instructing him to call Epstein.

44. Mr. Hoag then called the number back and the call was answered by Mrs. Evans who stated that Mr. Hoag needed to make a payment and that he was a "repeat offender of payday loans" and that he was already being prosecuted for fraud.

45. In somewhat of a panic, Mr. Hoag researched the phone number for CashNet USA and called them to determine if he had forgotten any loan that he was alleged to have made with them.

46. Upon providing his social security number to the woman who answered the phone named Ciera, Mr. Hoag was assured that he had never had any loan—payday or otherwise—with CashNet USA.

47. Ciera assured Mr. Hoag that her records went back to 2002 when the company was first formed.

48. Mr. Hoag was very relieved but at the same time extremely distressed at the persistence and magnitude of the illegal debt collection harassment.

49. Then, on or about September 5, 2013, at or about 5:56 p.m., Mr. Hoag received a call from Epstein from a man who identified himself as Investigator Johnson but who Mr. Hoag recognized as Investigator Jones.

50. Mr. Johnson/Jones stated that he would give Mr. Hoag one final chance to resolve the debt issue.

51. Mr. Hoag informed him that he had confirmed with CashNet USA that he had no such loan.

52. Mr. Johnson/Jones persisted in insisting that a payment be immediately paid and conformed Mr. Hoag's address.

53. Five minutes later, Investigator Johnson/Jones called back and said he could no longer hold off the charges.

54. Investigator Johnson/Jones then asked Mr. Hoag if he had intended to "fraud CashNet USA".

55. All of the above phone calls were made to MR. Hoag's cellular telephone.

56. Upon information and belief, Defendant, Epstein by and through its through its agents, representatives and/or employees acting within the scope of their authority, attempted to

collect a debt from Plaintiff by using an automatic telephone dialing system to place numerous telephone calls to Plaintiff's cellular telephone, 612-xxx-8441.

57. These calls originated from 678-666-5830, 678-666-5759 and 800-333-7368 and include but are not limited to the calls referenced above.

58. Plaintiff did not expressly consent to Defendant's placement of telephone calls to Plaintiff's cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice prior to Defendant's placements of the calls.

59. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

60. Upon information and belief, Defendant knew their collection techniques were in violation of the TCPA, yet still continued to use them therefore willfully or knowingly violated the TCPA.

**COUNT I-VIOLATION OF FCCPA, FLORIDA STATUTES §559.72(7)**

61. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 60

62. Florida Statutes §559.72(7) states:

> "In collecting debts, no person shall…
> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

Florida Statutes §559.72(7).

63. Defendant has on many occasions called Plaintiff by telephone directly, multiple times a day, attempting to collect the debt. Plaintiff's having to handle debt collection calls to

*FD-2078*

Plaintiff's cellular and/or residential phone multiple times a day, has annoyed Plaintiff and caused unnecessary upon Plaintiff and Plaintiff's family.

64. Defendant's actions of calling Plaintiff and threatening that he would lose his student aid, multiple times a day, reasonably can be expected to have the natural consequences of harassing Plaintiff.

65. Defendant, through its agents, representatives and/or employees acting within the scope of their authority acted willfully and intentionally violated Florida Statutes §559.72(7).

66. As a direct and proximate result of the violation of the FCCPA by Defendant, Plaintiff has been damaged. The damages of Plaintiff include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment.

67. Plaintiff has hired Loan Lawyers, LLC, to represent Plaintiff in this action and has agreed to pay a reasonable attorney's fee.

68. As a result of the above violations of the FCCPA, pursuant to Florida Statute §559.77(2), Plaintiff is entitled to recovery for actual damages, statutory damages of up to $1000 per violation, together with reasonable attorney's fees and court costs.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendant, EPSTEIN, WEINBERG & ASSOCIATES LLC, for actual damages, statutory damages, along with costs and reasonable attorney's fees pursuant to Florida Statutes §559.77(2), and for such other and further relief as justice may require. Plaintiff further respectfully requests that this Honorable Court enter an order enjoining the Defendant from contacting the Plaintiff with regards to the disputed debt.

### COUNT II-VIOLATION OF THE FDCPA: 15 USC 1692(g)

69. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 40.

FD-2078

70. Defendant, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FDCPA in that Defendant did not inform Plaintiff of her rights in contravention of 15 USC 1692(g)(a), which states:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

71. Defendant, through its agents, representatives and/or employees acting within the scope of their authority acted willfully and intentionally violated 15 USC 1692(g)(a). Further, Defendant continued to attempt to collect the debt without validating the debt.

72. As a direct and proximate result of the violation of the FDCPA by Defendant, Plaintiff has been damaged. The damages of Plaintiff include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment.

73. Plaintiff has hired Loan Lawyers, LLC, to represent him in this action and has agreed to pay a reasonable attorney's fee.

74. Pursuant to 15 U.S.C. §1692k, Plaintiff is entitled to recover actual damages together with additional statutory damages up to $1,000.00, together with court costs and reasonable attorneys fees.

*FD-2078*

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant for actual damages, statutory damages, along with costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k, and for such other and further relief as justice may require.

### COUNT III-VIOLATION OF FCCPA, FLORIDA STATUTES §559.72(9)

75.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 60.

76.     Florida Statutes §559.72(9) states:

> "In collecting debts, no person shall…
> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

77.     Defendant, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FCCPA in that Defendant contacted Plaintiff again on August 21, 2013, in an attempt to collect the alleged debt.

78.     Defendant had not mailed the written nor orally transmitted the required noticed pursuant to 15 U.S.C. 1692(g)(a).

79.     Defendant was not then permitted to attempt to collect the debt

### COUNT IV- VIOLATION OF THE TCPA, 47 U.S.C § 227 (b)(1)(A)(iii)

80.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 60.

81.     Defendant placed many non-emergency calls, including but limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system in violation of 47 U.S.C §227 (b)(1)(A)(iii).

82.     The term "automatic telephone dialing system" according to 47 U.S.C. § 227(a)(1):

> "… means equipment which has the capacity –

*FD-2078*

      (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
      (B) to dial such numbers."

47 U.S.C. § 227(a)(1).

83.    Plaintiff did not expressly consent to EPSTEIN to contact Plaintiff him via cellular phone.

84.    For each of the above phone calls placed to Plaintiff's cellular telephone, Plaintiffs have been charged by their telephone service provider.

85.    The aforesaid calls to Plaintiff's cellular telephone were placed using an automated telephone dialing system.

86.    Defendant's method of contacting Plaintiff is indicative of its ability to dial numbers without any human intervention in the calling process, which the FCC has opined is the hallmark of an automatic telephone dialing system (i.e. auto-dialer). See *In the Matter of Rules & Regulations Implementing The Telephone Consumer Protection Act of 2008*, CG Docket No. 02-278, FCC 07-232 (1/4/08) ¶¶ 11-13; *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517583, 18 F.C.C.R. 14014, ¶ 132 (Fed. Commc'n Cmm'n July 3, 2003).

87.    In sum, Defendant made telephone calls to Plaintiff's cellular telephone, which were either initiated by an automatic telephone dialing system and/or contained a pre-recorded message and were made without the prior express consent of Plaintiff.

88.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy, and such calls

can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

89. Under the TCPA, and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

90. Defendant, through its agents, representatives and/or employees acting within the scope of their authority acted willfully and intentionally violated the TCPA, 47 U.S.C § 227 (b)(1)(A)(iii).

91. Defendant, through its agents, representatives and/or employees acting within the scope of their authority acted willfully and intentionally violated the TCPA, 47 U.S.C §227 (b)(1)(A)(iii).

92. As a direct and proximate result of the violation of the TCPA by Defendant, Plaintiff has been damaged. The damages of Plaintiff include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment.

93. As a result of Defendant's violations of 47 U.S.C. § 227 et seq, Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(b)(3)(C), and $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

94. Plaintiff is entitled to injunctive relief prohibiting Defendant from contacting the Plaintiff on his cellular phone using an automated dialing system pursuant to the 47 U.S.C. Section 227(b)(3)(a).

*FD-2078*

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendant for statutory damages of $1,500.00 for each and every violation, and for such other and further relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff, DAVID ALAN HOAG, hereby demands a trial by jury of all issues so triable.

## VERIFICATION

I, DAVID ALAN HOAG *Sui Juris*, having read the foregoing, hereby verify, under penalty of perjury, that the above statements of facts are true and correct.

*[signature]*
DAVID ALAN HOAG

Respectfully Submitted,

*[signature]*

Yechezkel Rodal, Esq.
Florida Bar Number: 91210
LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
377 North State Road 7, Suite #202
Plantation, FL 33317
Telephone:   (954) 523-4357
Facsimile:    (954) 581-2786
E-mail:        chezky@floridaloanlawyers.com

*FD-2078*